his use; whether, where the suit is brought in the state court, and therein the defendant pleads the general issue only, after which the suit is removed to this court, and, instead of proceeding upon the issue joined in the state court, the plaintiff waives those pleadings and declares anew in this court, the defendant may here insist upon the nonjoinder of the other partners or the want of sole title in the plaintiff, under the general issue here pleaded; whether the defendant had any sufficient legal right or authority to receive the money which was paid to him, and pay it over to the United States; whether so paying over the money is any protection to the defendant against an action by the plaintiff; whether the act complained of was in the exercise of a lawful authority in time of war, or in the exercise of such a jurisdiction that the defendant cannot be made liable therefor in this court—these, and, perhaps, some other questions have been the subject of testimony and of discussion in this case. I am of opinion, that, whatever answers be given to these questions, the action cannot be maintained.

The theory of the case is, that the defendant, as major general commanding the forces of the United States, then holding the city of New Orleans and its immediate vicinity in actual military occupation, took from an emissary of W. A. Britton & Co., who was seeking to effect an entrance from rebel territory, through the lines of the loyal forces, into New Orleans, the check in question; that such check was drawn at Natchez, within the rebel territory, not by the plaintiff but by his said late copartners, for the purpose above stated; and that the defendant, by means of his said military authority, as major general commanding, or by color thereof, compelled the payees of the check to endorse the same to him, and made use of such check as a means or instrument of drawing the amount thereof from the Citizens' Bank of New Orleans, which bank paid to him the sum therein specified. It is proved, that the defendant received the money in his capacity of major general, and that he received it professedly for the United States, claimed title thereto on behalf of the United States, and duly accounted therefor to the United States. If, as the plaintiff insists, such receipt of the money was without authority or right, and it be conceded that the plaintiff can, as matter of law, treat the money thus received by the defendant as his identical money, received by the defendant to the plaintiff's use, then the act of the defendant was plainly a wrong done by the defendant by virtue or under color of his authority as major general of the United States assigned to the command of the forces at New Orleans, within section 7 of the act of March 3, 1863 (12 Stat. 757. See, also, the act of May 11th, 1866; 14 Stat. 46), and, as such, is within the limitation of two years, within which, after such wrong, the action should have been brought. The plaintiff cannot, by the mere form of his action, do away with the statute, which was intended to protect the officers of the government against suits or actions in any form for the alleged wrong, unless brought within the time limited. Whether, in a given case, a plaintiff brings the action in form as for a tort, or on the alleged implied contract, the statute equally applies.

From January, 1863, until the action was commenced, the defendant was in Washington, D. C., New York, Massachusetts, or that part of Virginia which was excepted by the president from his proclamation of January 1st, 1863 (12 Stat. 1268), declaring what states and parts of states were in rebellion. It is testified that, in that part of Virginia the judicial tribunals were open to the prosecution of civil suits, and that process might at any time have been served upon him. There would seem, therefore, to be no reason why such process should not have been served on him there, which was not equally applicable to the state of New York itself. If this be so, then the saving act of June 11th, 1864 (13 Stat. 123), does not relieve the plaintiff from the effect of the previous limitation. The action was not commenced, as conceded on the trial, until June 6th, 1865.

Judgment must be directed for the defendant.

---

## Case No. 1,905.

### BRITTON v. PAYEN.

Circuit Court, S. D. New York.

[Affirming Case No. 1,906. No opinion can be found.]

---

## Case No. 1,906.

### BRITTON v. PAYEN et al.

### SAME v. BREWSTER et al.

[7 Ben. 219;[1] 9 N. B. R. 445.]

District Court, S. D. New York. March 23, 1874.[2]

BANKRUPTCY — FRAUDULENT PREFERENCE — SETTING ASIDE JUDGMENT — ACTION BY BANKRUPT NECESSARY.

1. On May 17th, 1871, P. commenced a suit against B. and B., to recover for rent then due. One of the partners appeared in the suit, but took no other proceeding. On October 12th, 1871, judgment was entered against the one who had appeared, for failure to answer, and on October 16th an execution to the sheriff was issued on the judgment, under which said sheriff levied on the interest of such partner in a stock of carriages belonging to the firm. On November 6th, 1871, a petition in involuntary bankruptcy was filed against B. and B., and the

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by the circuit court on appeal. Case not reported.]